IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMMY WHITE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SMITHKLINE BEECHAM | : | |
| CORPORATION | : | |
| d/b/a GLAXOSMITHKLINE | : | NO. 10-2141 |

MEMORANDUM

McLaughlin, J.                                              August 5, 2010

The plaintiff, a citizen of Florida, filed this products liability action in the Court of Common Pleas of Philadelphia county on April 12, 2010 against "SmithKline Beecham Corporation d/b/a GlaxoSmithKline." On May 10, 2010, GlaxoSmithKline LLC ("GSK LLC") removed the case to this Court, alleging diversity jurisdiction. In the Notice of Removal, the defendant avers that:

> 7. On October 27, 2009, SmithKline Beecham Corporation ("SKB"), a Pennsylvania corporation, converted into GlaxoSmithKline LLC, a limited liability company organized under Delaware law.
>
> 8. In order to clarify its status in Pennsylvania (i.e., no longer having the status as a Pennsylvania corporation), SKB filed modified articles of dissolution with the Pennsylvania Department of State pursuant to 15 P.A. C.S.A. § 1980.
>
> 9. The articles of dissolution terminated SKB's status as a domestic business corporation under Pennsylvania law, and the entity continued to exist as GSK LLC under

> Delaware law. As the successor entity, GSK
> LLC succeeded to the liability of SKB.
>
> 10. Plaintiff is a citizen and resident of
> the State of Florida.
>
> 11. GSK LLC is a Delaware limited liability
> company.
>
> 12. For purposes of diversity jurisdiction,
> the citizenship of an LLC is that of its
> members.
>
> 13. The sole member of GSK LLC is
> GlaxoSmithKline Holdings (Americas) Inc.
> GlaxoSmithKline Holdings (Americas) Inc. is a
> Delaware Corporation with its principal place
> of business in Wilmington, Delaware.
>
> 14. Thus, GSK LLC is a citizen of Delaware,
> and complete diversity of citizenship exists
> between plaintiff and defendant GSK LLC.

Notice of Removal at 2-3 (citations and footnotes omitted).

On June 8, 2010, the plaintiff moved to remand the case to the Court of Common Pleas on the ground that the defendant is a citizen of Pennsylvania and could not remove under 28 U.S.C. § 1441(b), which prohibits removal by a citizen of the State in which the action is brought.[1] In her initial brief, the

---

[1] Although the plaintiff also alleges that the Court does not have subject matter jurisdiction, that is incorrect. Because the complaint states that the plaintiff is a citizen of Florida, there would be complete diversity whether the defendant is a citizen of Pennsylvania or Delaware. The removal statute, however, limits the circumstances in which a defendant may remove a case from state court, despite the fact that a federal court would have had original jurisdiction over the case if it had been brought in federal court originally. See, e.g., Wright & Miller, Federal Practice and Procedure, § 3721 (4th ed. 2009) (distinguishing between subject matter jurisdiction and removal under § 1441).

plaintiff argues that GSK LLC's principal place of business is Pennsylvania under the "nerve center" test, notwithstanding the defendant's recent change to its corporate structure and that, in any event, the defendant continued to be a citizen of Pennsylvania for two years after dissolution under 15 Pa. C.S. § 1979.

In its opposition to the motion to remand, GSK LLC argues that because it is a limited liability corporation, its citizenship is determined by the citizenship of its members. GSK LLC has one member: GlaxoSmithKline Holdings (Americas) Inc. ("GSK Holdings"). The defendant then contends that GSK Holdings is incorporated in Delaware and that its principal place of business is also in Delaware. The defendant also argues that § 1979 is not applicable because SKB did not dissolve under Pennsylvania law. It, instead, "domesticated itself under the laws of another jurisdiction" as allowed by 15 Pa. C.S. § 1980.

In her reply memorandum, the plaintiff appears to concede that the citizenship of an LLC is determined by the citizenship of its members, but disputes that GSK Holdings's principal place of business is Delaware. She argues that under the "nerve center" test, GSK Holdings's principal place of business is Pennsylvania. She also reasserts the applicability of § 1979.

The defendant is correct that the citizenship of an LLC is determined by the citizenship of its members. See Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010). There is no dispute that GSK Holdings is the only member of GSK LLC and that GSK Holdings is a Delaware corporation. The question before the Court, therefore, is the location of GSK Holding's principal place of business.

Both parties agree that the Court should apply the "nerve center" test, based upon the United States Supreme Court's recent holding that "the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." Hertz Corp. v. Friend, 130 S.Ct. 1181, 1186 (U.S. 2010). The Supreme Court approved of the lower federal courts' use of the metaphorical phrase "nerve center" to describe the principal place of business and stated that "the 'nerve center' will typically be found at a corporation's headquarters." Id. The Supreme Court advised that the "nerve center" should be more than "simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." Id.

In support of its assertion that GSK Holdings' principal place of business is in Delaware, the defendant has submitted the affidavit of Julian Heslop, the Chief Financial

4

Officer of GlaxoSmithKline PLC and the President and a director of GSK Holdings. Mr. Heslop states that GSK Holdings serves a narrow asset management function and holds financial assets and liabilities, largely in relation to the GlaxoSmithKline group of companies. Affidavit of Julian Heslop at ¶ 15, attached as Ex. A to Def.'s Opp'n. He states that GSK Holdings maintains its headquarters in Delaware and identifies a Delaware address in tax filings and in documents filed with the Delaware Secretary of State. Id. at ¶¶ 13, 17 and 18. According to the affidavit, GSK Holdings' activities are controlled and coordinated through actions and decisions of its officers and directors and, although many actions in furtherance of its business are conducted outside of Delaware, particularly in London, England, the formal control over and approval of all significant decisions regarding those actions are made and ratified by its officers and directors in Delaware. Id. at ¶¶ 15 and 19. Mr. Heslop also avers that GSK Holdings' Board of Directors holds its quarterly meetings in Delaware, in which it reviews and approves the corporate accounts and reviews, controls and ratifies the key business activities of GSK Holdings; the minutes reflecting the actions of the board are stored with the corporate secretary in Delaware; and the administrative functions attendant to the meetings of the Board of Directors are centralized in Delaware. Id. at ¶ 22.

The plaintiff, however, contends that GSK Holdings' Delaware office is "simply an office where the corporation holds its board meetings" and not an actual place of business. Hertz, 130 S. Ct. at 1192. The plaintiff argues that the GSK Holdings' actual management and control are based in Pennsylvania.[2] The plaintiff's sole evidence in support of such an assertion is information culled from government websites concerning contracts held between the defendant and the United States Department of Health and Human Service. These websites list an "operational address" for GSK Holdings in Pennsylvania.

Such evidence does not establish that Pennsylvania is the "nerve center" of GSK Holdings. First, the defendant avers in its sur-reply that the information listed on the websites is factually incorrect. GSK LLC, not GSK Holdings, should have been identified as the contracting entity on these websites. Second, even if the defendant does have an operational address in Pennsylvania, the Supreme Court recognized in Hertz that a corporation "may have several plants, many sales locations, and

---

[2] At times, the plaintiff appears to be asking the Court to disregard GSK LLC's corporate status as a Delaware limited liability corporation and, instead, view GSK LLC itself as a Pennsylvania corporation. The plaintiff, however, gives the Court no reason to do so. The plaintiff does not argue that the defendant's conversion from a Pennsylvania corporation into a Delaware limited liability corporation was inconsistent with either Pennsylvania or Delaware law. Nor does the plaintiff allege that the defendant's current corporate structure violates any Delaware law controlling the structure of limited liability corporations.

6

employees located in several different places." Id. at 1994. The difficulty of determining "which of these different business locales is the 'principal' or most important 'place'" was one of the Supreme Court's reasons for adopting the "nerve center" test. Id. Based upon the information listed on these websites alone, the Court cannot conclude that Pennsylvania is GSK Holdings' "nerve center."

Mr. Heslop's statements, on the other hand, provide ample evidence that GSK Holdings' "nerve center" is in Delaware. Its offices and headquarters are located in Delaware. All significant decisions are made and ratified by its directors and officers in Delaware. Its Board of Directors hold their quarterly meetings in Delaware. From this evidence, the Court concludes that Delaware is the place in which GSK Holdings' high level officers direct, control, and coordinate the corporation's activities. Under Hertz, therefore, GSK Holdings' principal place of business is in Delaware.

The plaintiff also argues that, regardless of GSK LLC's citizenship, Pennsylvania courts retain jurisdiction over the defendant for two years after its dissolution as a Pennsylvania Corporation, pursuant to 15 Pa. C.S. § 1979(a). Section 1979(a)(2) provides, in relevant part, that

> [t]he dissolution of a business corporation, either under this subchapter or under Subchapter G (relating to involuntary liquidation and dissolution) or by expiration

7

>           of its period of duration or otherwise, shall
>           not eliminate nor impair any remedy available
>           to or against the corporation or its
>           directors, officers or shareholders for any
>           right or claim existing, or liability
>           incurred, prior to the dissolution, if an
>           action or proceeding thereon is brought on
>           behalf of any . . . person before or within
>           two years after the date of the dissolution
>           or within the time otherwise limited by this
>           subpart or other provision of law, whichever
>           is less.

The plaintiff argues that, because the defendant is subject to suit under this subsection, the defendant remains a Pennsylvania corporation and the defendant improperly removed this case.

Section 1979, however, does not apply in these circumstances. Although SBK did file Articles of Dissolution with the Department of State of the Commonwealth of Pennsylvania, those articles were filed "in accordance with 15 Pa. CSA []1980." See Articles of Dissolution, attached as Ex. C to Def.'s Opp'n. Section 1980 involves the dissolution of a corporation by domestication under the laws of another jurisdiction. It provides, in relevant part, that

>           [w]henever a domestic business corporation
>           has domesticated itself under the laws of
>           another jurisdiction . . ., the corporation
>           may surrender its charter under the laws of
>           this Commonwealth by filing in the Department
>           of State articles of dissolution under this
>           subchapter containing the statement specified
>           by section 1977(b)(1) through (4) (relating
>           to articles of dissolution).[3]

---

    3    Section 1977(b)(1)-(4) requires the corporation to
include the following information in the articles of dissolution:

8

15 Pa. C.S. § 1980. The official commentary for § 1980 states that the section was "intended to provide a procedure under which a domestic business corporation that has domesticated itself under the laws of another jurisdiction can clarify its status in Pennsylvania." The commentary further explains that "[t]he effect of filing under this section is not to dissolve the corporation in the ordinary sense but simply to terminate its status as a domestic business corporation. The existence of the corporation is not affected because the same entity continues to exist in the new jurisdiction of incorporation."

Survival statutes like § 1979 exist as a method of protecting creditors and other plaintiffs by ensuring they have a means of recovery against a fully dissolved corporation. The two-year survival period provided in that section is not necessary, however, for a plaintiff to be able to bring suit against a corporation that has voluntarily dissolved under § 1980. When a corporation "dissolves" by domestication under § 1980, the corporation still exists as a corporation under the laws of another state. No remedy for any right or claim that

---

the name of the corporation, the address of its registered office, the statute under which it was incorporated, the date of incorporation, the names and addressed of its directors and officers, and the manner in which the proposal to dissolve was adopted by the corporation. Section 1980, therefore, does not require a corporation to include the statements regarding the discharge of its assets and liabilities listed in § 1977(b)(5)-(8) that are ordinarily required after a voluntary dissolution.

9

existed or liability that was incurred prior to the conversion would be eliminated or impaired by this process. A survival statute like § 1979, therefore, is not necessary to preserve such remedies, rights or claims.

The plaintiff relies on a line of cases from the United District Court of the Southern District of Illinois that reach a contrary conclusion.[4] These cases, however, assume that SKB fully dissolved at some point and then was reconstituted as GSK LLC. Such an argument is inconsistent with the process by which the defendant actually converted from a Pennsylvania corporation into a Delaware limited liability corporation. That conversion was a multi-stage process in which the defendant (1) established itself as a Delaware corporation, (2) voluntarily dissolved its status as a Pennsylvania corporation pursuant to § 1980, and (3) converted from a Delaware corporation into a Delaware limited liability company. At no point in the process did the defendant

---

[4] Colon v. SmithKline Beecham Corp., No. 09-1073, 2010 WL 46523 (S.D.Ill. Jan. 5, 2010); Alexander v. SmithKlineBeecham Corp., No. 09-1072, 2010 WL 750031 (S.D.Ill. Mar. 3, 2010); Aaron v. SmithKlineBeecham Corp., No. 09-1071, 2010 WL 1752546 (S.D.Ill. Apr. 28, 2010).

terminate its existence as a corporate entity.[5]  The two-year survival period of § 1979 was never triggered.

The Court, therefore, concludes that, because the defendant is not a Pennsylvania citizen and because § 1979's two-

---

[5]  The defendant did not dissolve as a corporate entity when it converted into a Delaware corporation under 8 Del. C. § 265, which controls the conversion of other entities, including foreign corporations, into Delaware corporations.  See § 265(a). Section 265(g) provides, in relevant part, that

> [u]nless otherwise agreed for all purposes of the laws of the State of Delaware or as required under applicable non-Delaware law, the converting other entity shall not be required to wind up its affairs or pay its liabilities and distribute its assets, and the conversion shall not be deemed to constitute a dissolution of such other entity and shall constitute a continuation of the existence of the converting other entity in the form of a corporation of this State.

Nor did the defendant dissolve when it converted from a Delaware corporation into a Delaware limited liability corporation under 6 Del. C. § 18-214.  Section 18-214(d) provides, in relevant part, that, upon filing a certificate of conversion with the Delaware Secretary of State, "the existence of the limited liability company shall be deemed to have commenced on the date the other entity commenced its existence in the jurisdiction in which the other entity was first created, formed, incorporated or otherwise came into being."  Section 18-214(e) further provides that "the conversion of any other entity into a domestic limited liability company shall not be deemed to affect any obligations or liabilities of the other entity incurred prior to its conversion to a domestic limited liability company or the personal liability of any person incurred prior to such conversion."

year survival period is inapplicable, this case was properly removed. The plaintiff's motion to remand is denied.

An appropriate order shall issue separately.